CASE 78.—ACTION BY CLARENCE C. CLAYPOOL AGAINST THE CONTINENTAL CASUALTY COMPANY ON AN ACCIDENT INSURANCE POLICY.—October 8.

## Claypool v. Continental Casualty Co.

Appeal from Warren Circuit Court.

JOHN M. GALLOWAY, Circuit Judge.

Judgment for defendant, plaintiff appeals — Affirmed.

1. Insurance—Application—False Statements—Effect.—A false statement in an application for an accident policy insuring against the loss of a hand in a specified sum, and against less severe injury by payment of a weekly indemnity, as to the amount of the applicant's weekly earnings, does not defeat a recovery for the loss of a hand.

Claypool v. Continental Casualty Co.

2. **Same—Existence of Contract—Evidence.**—In an action on an accident policy stipulating that it should not be in force until delivered, and issued on an appplication stipulating that the insurance should not take effect until the application had been accepted and a policy issued, evidence held to fail to show that the application was received by insurer and acted on before insured was injured.

3. **Appeal and Error—Harmless Error.**—Where, in an action on an accident policy, the evidence failed to show a contract of insurance at the time insured received the injury, the error in transferring the cause to the equity side of the docket, and in failing to permit the jury to try all the questions raised by the pleadings, was not prejudicial, and must be disregarded under Civil Code, secs. 134, 756, requiring the disregard of errors not affecting the rights of the complaining party.

SIMS & GRIDER for appellant.

POINTS AND AUTHORITIES.

1. The matter of fraud alleged in the answer presented no defense, and the lower court erred in transferring the case to equity.

2. The defense that the plaintiff in his application for Commercial policy No. 834133, fraudulently represented that his weekly earnings exceeded his weekly indemnity under the policy, is not available in a suit for the loss of life or limb. (Aetna Insurance Co. v. Claypool, 107 S. W. 325.)

3. When pplication is made for insurance and the insurer accepts the remittance sent therewith, and applies same to payment of the premium, the contract of insurance thereupon becomes complete, and can not be rescinded except by mutual consent of the parties. (Hartford Life Ins. Co. v. Milet, 105 S. W., 144.)

4. Proof of claim under wrong policy, made by mistake of another, without the knowledge or consent of the insured, would be no bar to recovery on the proper policy, and could in no event work estoppel.

5. The issue as to whether the plaintiff unnecessarily exposed himself to the obvious risk of danger, having been found by the jury favorable to the plaintiff, the court will not disturb the finding. (Aetna Ins. Co. v. Claypool, 107 S. W., 325.) The case of Aetna v. Claypool was tried on same evidence as the case at bar.

Claypool v. Continental Casualty Co.

6. Where a jury trial is demanded upon a legal issue to be tried out of chancery, the finding of the jury is binding upon the court, and the court must either render judgment according to the finding, or set aside the finding of the jury and grant a new trial when the verdict is palpably against the evidence. The court can not ignore the verdict of the jury and decide the fact himself. (Morawick v. Martineck, 107 S. W., 759.)

MANTON MAVERICK, JOHN E. DU BOSE and JOHN B. RHODES for appellee.

### POINTS AND AUTHORITIES.

1. The appellant and appellee agreed that the paper sued on should not become effective until the application was received, examined and approved and the policy written up, signed by the policy-writer, and delivered. When this was done the appellant had lost that part of his body for the loss of which this suit was brought. The minds of the parties had not met and there was no contract. (Parson on Contracts, vol. 1, p. 476; N. Y. Life Ins. Co. v. Long's Admr., 26 Ky. L. F.; Dickey v. Continental Casualty Co., 89 S. W., 436, p. 6.)

2. There was no finding of the jury that would have authorized a verdict for appellant.

3. The court did not err in transferring the cause to equity nor in giving judgment for appellee.

4 It was the duty of the lower court and of this court to disregard any error or defect in the proceedings which did not affect the substantial rights of the appellant. (Civil Code, sections 134 and 756.)

OPINION OF THE COURT BY JUDGE LASSING—Affirming.

Appellant, Claypool, in the summer and fall of 1905 was living in Dyersburg, Tenn., where he was the local agent of the Provident Savings Life Insurance Company on a salary of $50 per month. In addition to this employment, he represented the Continental Casualty Company of Chicago as its local agent. In September of the same year he took out with the said

casualty company a policy known as an "industrial" policy, by the terms of which the liability of the company was limited to $700 for loss of life by accident, and one-half of this sum for the loss of a hand. On the 9th of November of the same year he wrote a letter to the Continental Casualty Company, in which he made application for a policy with said company on what is known as the "commercial" plan. The liability of the company on this policy was limited to $5,000. At the time this last application was made out, he had a policy of accident insurance on his life for $5,000 in the Aetna Insurance Company. The application for the commercial policy, which was dated November 9th, was received by the home office of the company in Chicago on November 11th. As the applicant already had a policy in force with their company on the industrial plan, it declined to accept the application on the commercial plan during the life of the policy on the industrial plan, and so wrote the applicant, Claypool, telling him that they would not issue another policy, but suggested that, inasmuch as the policy he then had would expire on December 1st following, the matter should lie over until that time; that they would hold his check for $3.75, which he had sent with his application on November 9th, in their "suspense account." Claypool testifies that he received this letter, in which his application was returned to him, on the 14th of November, and that on that day, in the early morning, he wrote another letter to the company, in which he returned the application which he had originally made, and notified the company that he understood that, when he made the application for the commercial policy, in so doing he canceled the industrial policy, according to its terms, and that the company could, therefore, either return

his check or issue its policy under the commercial plan, as he had indicated he desired. On the 15th of November, about 4 o'clock in the afternoon, while attempting to unbreech a gun with which he had been hunting, in order that he might clean it, Claypool had his hand shot off. Notice of the accident was, in the course of time, brought home to the company and payment of $2,500 was demanded by Claypool, according to the terms of the commercial policy, which had been sent to him after the accident. This was refused by the company on the ground that the application which Claypool testified he mailed to them on the 14th of November was not received by them until the morning of the 16th, and that the policy was not issued until the 18th, and, as at that time the injury had already occurred, no liability existed on the part of the company therefor. Being unable to effect a settlement, Claypool sued the Continental Casualty Company for $2,500 for the loss of his hand, to which he was entitled, if anything, under the terms of the policy. The answer of the defendant denied liability, and set up several defenses, among others that the policy or contract was obtained by plaintiff through fraud and misrepresentations, intentionally made, in the following particulars: First, that the plaintiff was at the time the defendant's agent, and was guilty of fraud in delivering to himself the policy after he knew he was injured; second, that he fraudulently represented his weekly earnings as exceeding his weekly indemnity; third, the application when it was returned by the plaintiff was not received by the defendant until November 16th, the day after the plaintiff was hurt; fourth, after receiving the injury plaintiff made proof of his claim under the industrial policy; fifth, that the plaintiff in handling the gun as

he did voluntarily exposed himself to an obvious risk of danger. Upon the filing of this answer, the case was, on motion of the defendant, transferred to equity. The allegations of fraud in the answer were traversed by appropriate pleading. Thereafter the plaintiff moved the court for a new trial before a jury upon certain issues of fact. The motion was granted, a jury was impaneled, and plaintiff and defendant each submitted certain questions for the determination of the jury, proof was heard, and, the jury having answered said questions, the defendant moved for a new trial, thereupon the court, on its own motion, entered a judgment in favor of defendant, and dismissed plaintiff's petition.

The questions submitted to the jury and the answers thereto are as follows:

### Plaintiff's Questions.

"(1) Did the gunshot wound alleged in the petition necessitate the amputation of plaintiff's right hand at or above the wrist, and was his right hand so amputated? Yes.

"(2) Did the plaintiff at the time he received said injury unnecessarily expose himself to obvious risk of such danger? No.

"(3) Did the plaintiff's weekly earnings at the time he applied for policy No. 834133 exceed his weekly indemnity under the policy sued on and all other policies (exclusive of No. 930916, surrendered by him)? Yes.

"(4) Had the defendant at the time of plaintiff's injury received from plaintiff the first installment of the premium for policy sued on? Yes.

"(5) After application for policy No. 834133 had been returned by the defendant to plaintiff, when did

plaintiff mail same back to the defendant? November 14, 1905, between 6:30 and 7 o'clock a. m.''

### Defendant's Questions.

''(1) When, under the evidence in this case, was the letter of C. C. Claypool to the Continental Casualty Company, of date November 14, 1905, returning the application, received at the office of the Continental Casualty Company, at Chicago, Ill.? We believe this letter was received at company's office by noon November 15, 1905.

''(2) When and by what officer, or agent, of the defendant company, was the application inclosed in said last-mentioned letter of date November 14, 1905, accepted, and when was policy sued on written and issued? We believe that this application was accepted by defendant company when plaintiff complied with company's conditions in giving the required amended application, when said plaintiff remailed application on November 14, 1905, and by such officer as passed upon it before the application was returned to plaintiff.

''(3) What was the income or money plaintiff received from all sources from May 15, 1905, to November 15, 1905, six months' time? We believe it was over $50 per week.''

Conceiving that the court erred to his prejudice, appellant prosecutes this appeal.

A great deal of testimony taken in this case bears upon the question of the weekly earnings of appellant; it being the contention of appellee that appellant had intentionally stated in his application that his weekly earnings exceeded his weekly indemnity. when, as a matter of fact, they were not nearly equal

to it; but, as this court in the recent case of Aetna Life Insurance Company v. Claypool, 107 S. W. 325, 32 Ky. Law Rep. 856, held that the amount of income could only be considered upon the question of the weekly benefits to be paid under the policy, that evidence has no bearing upon the question at issue in this case. The real question is, was this commercial policy in force when plaintiff was injured? The application therefor, and upon which it was based, contains the following: "I understand and agree that this proposed insurance shall not take effect until this application has been accepted by the company, and the policy issued. [Signed] Clarence C. Claypool, Applicant." The policy, by its terms, provides that it is not to be in force until it is duly signed and delivered by the policy writer of the company. Claypool testifies that on the morning of the 14th of November he wrote the appellee company, returning the application with his letter. Clearly at that time no contract of insurance existed. He heard nothing further from the application, and knew nothing concerning it until the policy of insurance which the company issued thereon was received by him several days after the accident occurred. The appellee company introduced a witness, Miss Mary E. Heffron, who testified that she was in the employ of the appellee company in November, 1905, and that this particular letter and application was received by her on the morning of the 16th of November, and she sent it, with other applications received on that day, to Clarence W. Brown, another employe of appellee company. Clarence W. Brown testifies that he received this application some time during the day of the 16th of November, 1905, examined it, and directed a policy to be written upon the application, and that he sent

vol. 129—44

the said application, with his directions, to James E. Munson, another employe of appellee company. Munson testifies that, in obedience to the directions received from Mr. Brown, he wrote the policy and signed it on the 18th of November, 1905, and marked the application, showing the date the policy was written. As opposed to this testimony as to when the application was received by the company and the policy written is the testimony of appellant that he mailed the letter with the application inclosed on the morning of the 14th of November, and that letters usually took not more than 12 hours to go from Dyersburg to Chicago, although other letters were in the record which showed that they took from 24 to 35 hours in passing from Dyersburg to Chicago. But, under the terms of the contract as set out in the application and in the policy, the case is not made to turn upon when the application was mailed at Dyersburg, nor when it reached Chicago, nor when it arrived at the office of the appellee company; but, according to the policy of insurance, and the terms of the application upon which it was issued, the insurance was not to take effect until the application was received, examined, and approved, and the policy written and delivered. According to the overwhelming weight of all of the testimony in the case bearing upon these questions, they were all done after appellant received his injury on the afternoon of November 15th. The appellee company not having received or passed upon the application, much less issued the policy, at the time appellant received his injury, is certainly in no wise liable therefor under the contract sued on, unless the retention by it of the net premium, which appellant had forwarded with his application on the 9th, would have the effect of making it liable, even

though no application had been accepted by it or policy issued. Appellant insists that, as his check for $3.75 was cashed by the company, this is evidence that the application was in fact received and acted upon favorably, and that, therefore, the company is liable. The answer to this contention is found in the letter which the company wrote appellant when it returned his application on the 13th. At that time it cannot be contended that the company was acting in any other than the best of good faith. In that letter the company said: "We herewith return you the application, and would suggest that you favor us with a new one, dating the same, to become effective December 1st [the time when the industrial policy then held by appellant expired]. Awaiting your reply and a new application, we are holding the amount received in our 'Suspense Account,' etc. [Signed] H. G. V. Alexander, 2nd V. P., and General Manager." There is nothing in this letter which would support the theory of appellant that the company had appropriated to its own use the $3.75, but, on the contrary, it shows conclusively that the application in the form in which it then was was not acceptable to the company, and they, in returning it, suggested how it could be made acceptable to the company, and at the same time notified appellant that the money which he had forwarded with the application would be held in the "suspense account." The proof shows that this check was not passed into the general fund account of the company until after the satisfactory application was received by the company on the 16th of November, and the company, not knowing of the accident or injury to appellant, issued to him a policy on the "commercial" plan according to the terms agreed upon in the amended application which it received on the 16th.

The second ground relied upon by appellant is that it usually takes mail trains 12 hours to run from Dyersburg to Chicago, and that a letter mailed on the morning of the 14th would arrive in Chicago some time during the night, and be delivered on the morning of the 15th, and that the letter containing the amended application must have been received at that time. This might be true if the letter was promptly forwarded from Dyersburg, properly handled by the mail agents, the train proceeded on time, and the mail handled expeditiously at the Chicago end of the line; but there is nothing in the record to show the existence of any of these necessary prerequisites in order to support appellant's conclusion. He is building up a theoretical case, proceeding along speculative lines. While, as above stated, it is true that the letter mailed in Dyersburg on the morning of the 14th could have been delivered in Chicago on the morning of the 15th, it is equally true that it might not have been delivered until the morning of the 16th, and in the light of the positive evidence to that effect it was not. The failure of the company to preserve the envelope which inclosed this letter containing the amended application while a circumstance to be considered cannot militate against it; for it appears that all used envelopes were consigned to the waste basket, and only the letters preserved in the files. It may be added that such is the usual course of business concerns in regard to the preservation of their letters.

Appellant also complains that the lower court erred in transferring the case to the equity side of the docket. As the evidence in the case utterly failed to show the existence of a contract of insurance between appellant and appellee on the policy sued on, it would have been immaterial on which side of the docket the

case stood, for, had it remained on the ordinary docket, it would have been the duty of the judge at the conclusion of the testimony to have instructed the jury to find for appellee. Conceding that the case should have remained on the ordinary side of the docket, appellant was not prejudiced by its transfer, for he was given ample opportunity to present his entire case. On his motion certain questions were submitted to the jury for their finding and determination, and, although every question submitted to the jury was answered in favor of appellant, yet the finding of the jury upon all points submitted by appellant failed to make out his case, and the answers to the questions submitted by the defendant were mere conclusions, based upon no evidence, but, on the contrary, were in direct conflict with the direct and positive evidence of the four witnesses introduced by appellee, who testified concerning matters bearing upon two of the three questions submitted.

The third question submitted by appellee bore upon the weekly. earnings of appellant, and consequently has no bearing upon the case. Hence, even though the court erred in transferring the case to equity, the substantial rights of appellant have in no wise been prejudiced by reason of such transfer. There was not the slightest evidence showing that the application which appellant mailed at Dyersburg on the 14th was received or acted on before the time of the accident; for, giving to the testimony of appellant its full weight, it would only go to show that the letter containing the application which was mailed at Dyersburg on the 14th reached Chicago 12 hours after it left Dyersburg, and should have been delivered on the morning of the 15th. He does not pretend that the letter was received by the appellee company one mo-

ment earlier than the time its witnesses say it was received, to wit, about 8 o'clock on the morning of the 16th. This being true, his case must fail; for, in the absence of a showing on his part that this application was received and acted upon before the time he received the injury, under the plain terms and provisions of the application itself, there was no contract of insurance whatever.

There being no contract of insurance, appellant had no cause of action, and any errors that the court may have made in the transfer of the case to equity, or in the failure to permit a jury to try all of the questions raised by the pleadings, in no wise prejudiced his substantial rights, and, under the provisions of sections 134 and 756 of the Civil Code of Practice, which provide that "the court must in every stage of the action disregard any error, or defect, in the proceedings, which does not affect the substantial rights of the adverse party, and no judgment shall be reversed or affected by reason of such error or defect," the judgment of the lower court must be affirmed.

NUNN, J., dissents.