### DUNLAP v. OAK CLIFF PHARMACY CO.
### (No. 7024.) *

(Court of Civil Appeals of Texas. Austin. Nov. 10, 1926. Rehearing Denied Dec. 1, 1926.)

1. **Appeal and error ⬅172(1)—Plaintiff who relied on negligence at trial cannot raise issue of fraud for first time on appeal.**

.In action by customer against druggist for damages for personal injuries resulting from substitution of poisonous drug, plaintiff having pleaded and tried case on theory of negligence cannot raise issue of fraud for first time on appeal.

2. **Appeal and error ⬅927(7)—Only evidence favorable to appellant should be considered in determining whether evidence was sufficient for jury.**

In passing on question of whether there was sufficient evidence to go to jury on any issue, court must reject all evidence favorable to appellee and consider only that favorable to appellant.

3. **Druggists ⬅9—Druggist must use such prudence in dispensing medicines as will safeguard customers.**

Ordinary care required of druggist in the sale of medicine is a degree of prudence commensurate with danger to human life which may result from substitution of poisons.

4. **Druggists ⬅10—Negligence of druggist in substituting poison for harmless substance, representing them to be identical, held for jury.**

Evidence as to sale by druggist of poisonous drug to customer who asked for harmless and nonpoisonous substance, with representation that drug sold was practically the same as that asked for, held to make issue of negligence one for jury in action for injuries resulting from such substitution.

5. **Negligence ⬅136(5)—Rule as to sufficiency of evidence on peremptory instruction on contributory negligence is same as for negligence.**

The rule of law as to the sufficiency of evidence on a peremptory instruction is the same on the question of contributory negligence as on the issue of defendant's negligence.

6. **Trial ⬅142—Issues of fact are for jury, unless evidence is such that reasonable minds could not differ on its result.**

Issues of fact must be submitted to jury, unless evidence is of such character that reasonable minds cannot differ on deductions to be drawn therefrom.

7. **Druggists ⬅10—Contributory negligence of druggist's customer alleging injuries from substitution of drugs held for jury.**

Evidence in suit by customer against druggist for personal injuries resulting from substitution of poisonous drug for nonpoisonous substance held to require submission of issue of contributory negligence to jury.

Appeal from District Court, Dallas County; Louis Wilson, Judge.

Action by Majorie M. Dunlap against the Oak Cliff Pharmacy Company. From a judgment in defendant's favor, plaintiff appeals. Reversed and remanded.

Gaius G. Gannon, of Dallas, for appellant.

Thomas, Frank, Milam & Touchstone, of Dallas, for appellee.

BAUGH, J. Appellant, a feme sole, sued appellee, a corporation, for damages for personal injuries alleged to have resulted from the negligence of appellee's agent, who was a druggist and manager of one of appellee's drug stores in Oak Cliff. The negligence charged was in the sale to her, when she called for Seilers antiseptic tablets, a nonpoisonous, alkaline, antiseptic tablet, of Diamond antiseptic tablets, a highly poisonous bichloride of mercury tablet.

Appellee answered by general and special exceptions, general denial, and a plea of contributory negligence. At the close of the evidence the trial court instructed the jury to find for appellee, defendant below. Hence this appeal.

Appellant raises three propositions on this appeal: First, that there was sufficient evidence on the issue of negligence to go to the jury; second, that appellee's agent misrepresented to appellant the nature and character of the tablets sold, and perpetrated a fraud upon her in order to effect a sale of the tablets used, against which fraud a plea of contributory negligence would not be available; and, third, that there was sufficient evidence that appellant was not guilty of contributory negligence to go to the jury.

[1] We address ourselves first to appellant's second proposition. A careful reading of appellant's first amended original petition on which she went to trial fails to disclose that fraud was pleaded. We do not deem it necessary to set out or summarize the pleadings here, but the record clearly discloses, we think, that the case was tried in the court below on the theory of negligence. Appellant relied upon that issue in the trial court, and cannot be heard to raise the issue of fraud for the first time on appeal. As stated in Boatner v. Providence-Washington Ins. Co. (Tex. Com. App.) 241 S. W. 136:

"The law forbids the assumption of an attitude on appeal inconsistent with that taken at the trial, and on appeal litigants are restricted to the theory upon which the cause was prose-

cuted or defended in the court below [citing numerous authorities].”

[2, 3] In order to fix liability upon appellant it was necessary for appellant, under her pleadings, to show negligence upon the part of appellee's agent, and that such negligence was a proximate cause of her injuries. And in passing upon the question as to whether or not there was sufficient evidence to go to the jury on that issue, we must reject all evidence favorable to appellee and consider only that favorable to the appellant. Barron v. Railway Co. (Tex. Com. App.) 249 S. W. 825; Kirksey v. Traction Co., 110 Tex. 190, 217 S. W. 139. There is little controversy between appellant and appellee as to the rules of law involved. The care required of druggists in the sale of medicine to the public is well stated in Tremblay v. Kimball, 107 Me. 53, 77 A. 405, 29 L. R. A. (N. S.) 900, Ann. Cas. 1912C, 1215, as follows:

“The legal measure of the duty of druggists toward their patrons, as in all other relations of life, is properly expressed by the phrase 'ordinary care,' yet it must not be forgotten that it is 'ordinary care' with reference to that special and peculiar business. In determining what degree of prudence, vigilance and thoughtfulness will fill the requirements of 'ordinary care' in compounding medicines and filling prescriptions, it is necessary to consider the poisonous character of so many of the drugs with which the apothecary deals and the grave and fatal consequence which may follow the want of due care. In such a case 'ordinary' care calls for a degree of vigilance and prudence commensurate with the dangers involved. * * * 'Ordinary care' with reference to the business of a druggist must therefore be held to signify the highest practicable degree of prudence, thoughtfulness and vigilance and the most exact and reliable safeguards consistent with the reasonable conduct of the business in order that human life may not constantly be exposed to the danger flowing from the substitution of deadly poisons for harmless medicines.”

About July 9, 1924, appellant, a girl then about 20 years of age, went with her father to one of appellee's drug stores and asked for Seilers antiseptic tablets. According to her testimony and that of her father, the druggist made a search for same, was unable to find them, and returned to appellant, who was seated at a table in the store, saying that he had no Seilers tablets, but that he had Diamond antiseptic tablets, and presented her with a bottle containing six tablets. The appellant then asked the druggist if they were the same or practically the same as the Seilers, to which he answered, “Yes.” According to her testimony this is substantially all that occurred at the time. The druggist did not know what use she expected to make of these tablets. The fact was, though not known to the druggist, that her menstruation had continued unduly long and vaginitis had developed. Her stepmother had told her that she had had similar difficulties; that her family

physician in New York had prescribed Seilers antiseptic tablets; and that she had used such tablets successfully by inserting two of them in her vagina upon retiring at night. She advised appellant to obtain and use them in that manner. Appellant upon her return home after purchasing the Diamond tablets, used them in the manner her stepmother had told her to use the Seilers, with the result that she received bichloride of mercury poisoning and suffered intense pain and bodily injuries with near fatal results. Appellee's druggist, who sold the tablets, testified that he knew when he sold appellant the tablets that the Seilers tablet asked for by her was a harmless, soothing, alkaline, nonpoisonous preparation, that it could be used in the manner in which appellant used the other tablets without injurious consequences and with probable beneficial results, and, to quote his testimony:

“I do not know that women use alkaline tablets in their raw state for irritation in the vaginal tracts. I do not know whether they do or not; I know that is what they are intended to be used for and can be used for. I know they can be used that way. I do not know that they can be used that way with safety. I have reason to anticipate whenever I sell alkaline tablets, from my experience in the business, not that they will be, but that they may be used that way.”

He also testified that he knew that the Diamond antiseptic tablet was a mercurial highly poisonous tablet. Testimony of physicians was that when used as appellant used them, the result was usually fatal. There was also ample testimony to show that had the tablets purchased been the Seilers tablets she asked for, the use made of them by appellant would not have been injurious but beneficial.

[4] Clearly this testimony was sufficient to go to the jury on the issue of negligence, unless appellant was guilty of contributory negligence as a matter of law. This issue will be discussed later. The general rule that to hold one responsible for injuries resulting from negligence, the injuries must be the reasonable and probable consequence of the negligent act and such as should have been foreseen at the time, is well established. 29 Cyc. 492 et seq. But it does not follow that appellee's druggist should have anticipated the particular injury sustained, nor the particular manner in which injury might be sustained. See Collins v. P. & N. T. Ry. Co., 110 Tex. 581, 212 S. W. 477, 222 S. W. 156, and cases therein cited. In the absence of mitigating circumstances, the sale by a druggist to a customer, who calls for a harmless, soothing, alkaline, nonpoisonous, antiseptic tablet, of a highly poisonous, mercurial, antiseptic tablet, with the representation to the purchaser that they were the same or practically the same, when such druggist knew the constituent elements of both tablets, raises a

question of negligence, if indeed it does not make a prima facie case of negligence as a matter of law.

This brings us to the question of whether or not appellant was guilty of contributory negligence as a matter of law. It is undisputed that the druggist had no knowledge of the purposes for which appellant desired said tablets nor of the advice given her by her stepmother. It is also uncontroverted that the bottle which contained the tablets sold was labeled "Poison," contained the skull and cross-bones sign, underneath which was printed:

"Diamond Antiseptic.—For external use only. —Mercury of Bichloride 7.3 grains. To make one one-thousandth solution dissolve one tablet in a pint of water. Antidote—give whites of eggs, sugar or starch mixed with water, emetics of mustard, tea or coffee."

When appellant reached home that night after purchase of the tablets her stepmother was asleep. She did not mention the matter of their use to her father, disturb her stepmother, nor prepare the solution called for on the label, but placed two of the tablets as far back in her vagina as she could push them with her finger, and retired. Such conduct, appellee contends, in the face of the warning and instructions on the bottle which she had read, and without consulting any one, she being a high school graduate, was not the conduct of a reasonably prudent person under the circumstances, nor the exercise of ordinary care, and constituted contributory negligence as a matter of law. On the other hand, viewing the testimony in the light most favorable to appellant, and this is necessary in determining whether the appellant was entitled to have a jury pass upon it, appellant testified that she knew nothing about the contents of either the Seilers tablet or the Diamond tablet; that she had never used either and knew nothing about the Seilers tablet except what her stepmother had told her, and that her stepmother had used the Seilers tablets under instructions from a physician with beneficial results by inserting them in her vagina; that the druggist had told her that Diamond antiseptic tablet was the "same or practically the same" as the Seilers tablet; that when she read the statement on the bottle "for external use only," she understood and interpreted that to mean that they were not to be taken into the stomach through the mouth; that she knew nothing about mercurial poisoning; and that notwithstanding the warning on the bottle, after what her stepmother had told her and what the druggist had told her, she did not anticipate any dangerous consequences, but expected the same results from their use as her stepmother had obtained in the use of the Seilers tablets.

[5, 6] The rule of law as to the sufficiency of the evidence on a peremptory instruction is the same on the question of contributory negligence as on the issue of the defendant's negligence. It is well settled that on any issue of fact, in the absence of a violation of some law, to authorize the court to take the question from the jury, "the evidence must be of such character that there is no room for ordinary minds to differ as to the conclusion to be drawn from it." Lee v. I. & G. N. Ry. Co., 89 Tex. 583, 36 S. W. 63. "If reasonable minds may differ" on the question of whether or not the party injured exercised ordinary care under the circumstances, then the matter should go to the jury, is the language in which other courts have expressed the rule. Barron v. Railway Co., supra; Emberlin v. Railway Co. (Tex. Com. App.) 267 S. W. 463. And we think it is not amiss to repeat here what Judge Cooley said in Railway Co. v. Van Steinburg, 17 Mich. 99, quoted with approval by Judge Pleasants in Irvin v. G. C. & S. F. Ry. Co. (Tex. Civ. App.) in 42 S. W. 661:

"The case, however, must be a very clear one which would justify the court in taking upon itself the responsibility; for, when the judge decides that a want of due care is not shown, he necessarily fixes in his own mind the standard of ordinary prudence, and, measuring the plaintiff's conduct by that, turns him out of court upon his own opinion of what a reasonably prudent man ought to have done under the circumstances. He thus makes his own opinion of what would be generally regarded as prudence a definite rule of law. It is quite possible that if the same question of prudence was submitted to a jury collected from the different occupations of society, and perhaps better competent to judge of the common opinion, he might find them differing with him as to the ordinary standard of proper care. The next judge trying a similar case may also be of a different opinion, and, because the case is not clear, hold that to be a question of fact which the first has ruled to be one of law."

[7] In the light of this rule and of the conduct of appellant viewed most favorably from her standpoint, we think the issue of contributory negligence became a jury question. Her stepmother had told her how to use the Seilers tablets, which she could have safely done. The druggist had told her that the Diamond was the same or practically the same. For all she knew the Seilers antiseptic tablet could have had the same label as the Diamond tablet. She interpreted the warning, "for external use only," to mean that the tablets should not be swallowed, which is the ordinary interpretation given that language by people generally. She was young, inexperienced in such matters, did not desire to disturb her stepmother, who had not been feeling well, and was asleep at the time. She doubtless felt a natural timidity about discussing matters of such delicacy with her father. Under such facts and circumstances, we think reasonable minds could differ on the question of whether or not she was negligent in the manner in which she used the Diamond tablets.

For the error stated, the judgment of the trial court is reversed and the cause remanded for another trial.

Reversed and remanded.