**SOUTHERN SURETY CO. v. SOLOMON.**
**(No. 7173.)**

Court of Civil Appeals of Texas. Austin. March 14, 1928.

**1. Parties 🗝29—All parties having direct interest in subject-matter of suit are "necessary parties."**

All parties having direct interest in the subject-matter of a suit, and whose interest will necessarily be affected by any decree that might be directed therein, are "necessary parties."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Necessary Parties.]

**2. Contracts 🗝187(3)—Agreement for valuable consideration to pay another's debt to third person inures to benefit of third person.**

When one for a valuable consideration agrees with another to pay the debt of that other person to a third person, such agreement inures to the benefit of the third person who may maintain an action thereon.

**3. Frauds, statute of 🗝18(2)—Insurer's agreement to settle insured's debt to others, in consideration of insured's accepting smaller sum in settlement of accident policies, held not required to be in writing.**

Alleged agreement between insured and insurer whereby, in consideration of insured's accepting a certain smaller sum in settlement of accident policies for injuries sustained, insurer agreed to settle insured's indebtedness to third persons, was not required to be in writing, nor even required to have approval or acquiescence of such third persons to be enforceable by insured or by such third persons against insurer.

**4. Insurance 🗝624(5)—Where insured claimed his release of accident insurer was given on insurer's agreement to pay his debt to third persons, such persons held necessary parties to insured's action on policy.**

Where insured, suing on accident policy, alleged that written release discharging insurer from liability was void because obtained from him by fraud, duress, threats, and undue influence, in that insurer's agent agreed to pay insured's debt to third persons in consideration of insured's accepting a smaller sum in settlement of policy, *held* that such third persons were necessary parties to the action, notwithstanding their disclaimer of any interest in policy or in the cause of action and their assignment to insured of any interest therein.

**5. Trial 🗝351(2)—Issues raised by pleadings and proof, when requested, should be submitted to jury.**

Issues raised by the pleadings and proof, when requested, should be submitted to the jury.

**6. Trial 🗝350(4)—Jury issue of good-faith controversy between insured and insurer did not arise, where insured attacked settlement for fraud, duress, and undue influence.**

As respects necessity of submitting issue to jury, issue of good-faith controversy between insured and insurer at time of settlement of claim on policy arises only when failure of consideration for payment by insurer of less than the full amount of the policy is raised, and so did not arise where insured attacked settlement and release given thereunder solely on the ground of fraud, duress, undue influence, and overreaching.

**7. Trial 🗝219—Court's failure, in action tried on special issues, to define words "overreaching," "pressure," "threats," "undue influence," "misrepresentation," and "fraud," held error (Rev. St. 1925, art. 2189).**

In action on accident policy, in which insurer set up written release executed by insured as a defense, special issues submitting questions whether settlement was induced by overreaching, pressure, threats, and undue in-

fluence, misrepresentation, and fraud as alleged in pleading, *held* erroneous, under Rev. St. 1925, art. 2189, in failing, over insurer's objections to define words "overreaching," "pressure," "threats," "undue influence," "misrepresentation," and "fraud"; ' such terms having a fixed legal meaning which ordinary person would not readily understand.

**8. Trial ⬅⬆352(5)—Special issue whether insured was induced to make settlement by overreaching, pressure, threats, and undue influence held not objectionable for multifariousness as to insurer (Rev. St. 1925, art. 2189).**

In action on accident policy, in which insurer set up as defense written release executed by insured, special issue asking jury whether settlement was induced by "overreaching, pressure, threats, and undue influence" substantially as alleged in pleading *held* not objectionable for multifariousness, under Rev. St. 1925, art. 2189, as respects insurer, since insured, in relying on all such elements combined as basis of recovery, assumed a more onerous burden than necessary.

**9. Trial ⬅⬆256(2)—Defendant, objecting to charge on issue on which plaintiff relied, held not required to submit proper charge.**

Defendant was not required to prepare and submit charge on issue on which plaintiff relied to recover, but it was sufficient to call trial court's attention to any defects in charge given by proper objection, and it then became trial court's duty to correct the error and give a proper charge.

**10. Appeal and error ⬅⬆216(3)—Complaining party must tender special charge to avail himself of court's failure to submit issue, but objection to erroneous charge sufficiently preserves matter on appeal.**

Where trial court fails to submit any particular issue, the complaining party must tender a special charge thereon to avail himself of such error on appeal, but, where court undertakes to charge on or submit such issue, and submits a defective or erroneous charge thereon, a proper objection thereto is sufficient to preserve the matter on appeal.

**11. Appeal and error ⬅⬆996—Unless reasonable minds could not differ on deductions to be drawn from evidence, appellate court will not interfere with jury's finding.**

In deciding whether ,evidence was sufficient to take case to jury, on issues involved, appellate court is not concerned with its contradictions, probative force, or credibility of witnesses, but that is a matter for jury, and, unless reasonable minds could not differ on the deductions to be drawn from the evidence as a whole, the appellate court will not interfere.

**12. Insurance ⬅⬆670—Finding on special issue that settlement was induced by overreaching, pressure, threats, and undue influence held in irreconcilable conflict with finding that insured was able to exercise own judgment.**

Jury's affirmative answer to special issue whether insured was induced to make settlement with insurer by overreaching, pressure, threats, and undue influence *held* in irreconcilable conflict with its affirmative answer to issue whether insured was able to exercise his own free and intelligent judgment in determining advisability of making settlement.

**13. Insurance ⬅⬆299—Any misrepresentations as to amount of insured's income in application held not to affect risk nor bar recovery on accident policies (Rev. St. 1925, arts. 5043, 5045).**

Under Rev. St. 1925, arts. 5043, 5045, representations made by insured in his application for insurance as to amount of his income, if false, *held* not to affect risk nor bar recovery on accident policies.

Appeal from District Court, Hays County; M. C. Jeffrey, Judge.

Action by C. L. Solomon against the Southern Surety Company. Judgment for plaintiff, and defendant appeals. Reversed and remanded for new trial.

Barrett & Barrett, of San Antonio, and R. E. McKie, of San Marcos, for appellant.

Will G. Barber and T. C. Johnson, Jr., both of San Marcos, for appellee.

BAUGH, J. Suit was upon a · health and accident insurance policy issued to appellee by appellant company. On December 28, 1923, appellee, Solomon, lost one foot through accidental means, and under the terms of said policy was insured against such loss in the sum of $2,500. He admitted payment to him by appellant of the sum of $833.33 and sued for the balance due, claiming interest, penalty, and attorney's fees. Appellant set up as a defense a written release executed by appellee, discharging it from all liability under said policy, and alleged payment to Solomon pursuant thereto of $833.33. By supplemental petition, Solomon pleaded that said settlement was void because obtained by overreaching, pressure, threats, undue influence, and by misrepresentation and fraud, among other things, in the following respects: That while he was still ill in the hospital at San Marcos from his accident and the amputation of his foot as a result thereof, H. W. Lake, the claim adjuster of appellant, came to him to adjust his claim against appellant company, and also a claim against another company in which Solomon held a policy for the principal sum of $5,000; that said Lake represented to him that he had authority also from Misses Bessie and Agnes Maney of San Antonio, Tex., to whom Solomon then owed about $6,000, to settle the indebtedness they held against him, and that, if appellee would accept $2,500 in settlement of both policies, he (Lake) would settle the $6,000 owed by him to the Maney sisters, 'thus saving him at least $1,000, and that, because of such agreement, which Solomon alleged was fraudulently made, with no intention on the part of Lake to carry out, and for the other

---

⬅⬆For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

reasons alleged, he was induced to execute the settlement agreement, and turn over his policies to said adjuster.

The trial was to a jury on special issues, hereinafter considered, on replies to which the trial court rendered judgment in favor of Solomon, from which the surety company has appealed. Other facts pertinent to the issues raised will be set forth in the discussion of those issues.

The first contention made by appellant, raised in the trial court by plea in abatement, is that the Maney sisters were, under appellee's own pleadings, necessary parties to this suit. Appellant took their depositions, and in their testimony they each disclaimed any interest in said policy sued upon. And upon the hearing on said plea in abatement appellee introduced a written instrument executed by them, disclaiming any interest in appellee's cause of action, and assigning to him whatever interest therein, if any, might appear to exist in their favor.

[1, 2] It is well settled that all parties who have a direct interest in the subject-matter of a suit, and whose interest will necessarily be affected by any decree that might be rendered therein, are necessary parties. Cotton v. Coit, 88 Tex. 414, 31 S. W. 1061; Waldrep v. Roquemore, 60 Tex. Civ. App. 138, 127 S. W. 248; Alexander v. Alexander (Tex. Civ. App.) 265 S. W. 1072; Hardin v. Hardin (Tex. Civ. App.) 1 S.W.(2d) 708. In the instant case Solomon admitted that he executed the written release, and that he had received the $833.33 on the policy sued upon. Unless said release is set aside, Solomon admittedly could not recover anything further on his policy. Ignoring, on this point, the questions of overreaching, duress, etc., appellee pleaded and testified that the consideration for its execution was twofold, payment of the $833.-33 on this policy, and a further oral agreement made with him by Lake that Lake would, with the $5,000 still due Solomon under said two policies settle and satisfy the entire indebtedness of approximately $6,000 due by him to the Maney sisters. As stated in Mathonican v. Scott & Baldwin, 87 Tex. 398, 28 S. W. 1064:

"It is the settled rule of this court, and of most of the courts of the American States, that when one for a valuable consideration agrees with another to pay the debt of that other person to a third person, such agreement inures to the benefit of the third party, who may maintain an action thereon."

[3] It was not necessary that such contract between Solomon and Lake with reference to appellee's indebtedness to the Maney sisters should have been in writing, or even that they should have acquiesced in or approved same. Bank of Garvin v. Freeman, 107 Tex. 523, 181 S. W. 187; Hill v. Hoeldtke, 104 Tex. 600, 603, 142 S. W. 871, 40 L. R. A. (N. S.) 672.

4 S.W.(2d)—38½

It may be contended that an agreement by Lake to "settle in full the claims of the Misses Maney" was not such an assumption by him of said indebtedness as to make him primarily liable thereon within the rule announced in Bank v. Freeman, supra. But whether so or not it was, if made, a binding contract for a valuable consideration, which Solomon could enforce against the surety company, even though it required payment by it of the full $6,000 to the Misses Maney, and one in which the Maney sisters had an interest, if they chose to assert it, at least to the extent of the $5,000 withheld by the adjuster for purposes, of payment to them under the terms of said agreement.'

[4] Under such facts alleged by the appellee, which are deemed to be established as to him for the purposes of the trial (Crosby v. Bonnowsky, 29 Tex. Civ. App. 455, 69 S. W. 212), we think that the Maney sisters were necessary parties to the suit. Not being parties, they would not be bound by the judgment·rendered. Nor do we think, as insisted by appellee, that their disclaimer in their depositions, nor their assignment filed in the hearing on said plea in abatement, obviated the necessity of their being made parties. Such disclaimer and assignment relate to the policy sued upon and to the cause of action asserted by appellee against appellant. The cause of action, if any, however, which may have accrued to the Maney sisters under appellee's allegations, could not have arisen from the policy in suit but would have been based upon the oral contract referred to, and which did not vest in them any interest in the policy itself.

[5, 6] Appellant's second contention is that the trial court erred in refusing to submit to the jury the requested issue as to whether a good-faith controversy between appellant and appellee over appellant's liability for any sum on said policy existed at the time the settlement agreement was made. Appellant denied liability in any sum on the ground both of misrepresentation of material facts in appellee's application, and on the ground that the injury was self-inflicted. It is well settled that issues raised by the pleadings and proof, when requested, should be submitted. However, the question of a good-faith controversy between insured and insurer at the time of settlement is applicable, as we understand the rule, only when failure of consideration for payment by the insurer of·less than the full amount of the policy is raised. In the instant case, appellee did not assail said settlement agreement for failure of consideration, but relied upon fraud, duress, etc., ·to set aside such settlement. If appellee established his allegations of fraud, etc., appellant's plea of good faith became immaterial, and made the submission of that issue unnecessary. If he failed to establish his allegations on those issues, we understand him to

admit that such settlement was valid and binding. In either event it was not necessary to submit the issue requested.

[7] Special issues Nos. 2 and 3 submitted to the jury were as follows:

"(2) Was the plaintiff induced to make the settlement with H. W. Lake by overreaching, pressure, threats and undue influence, in manner substantially as alleged in his pleading? You will answer 'He was' or 'He was not,' as you may find the facts to be." The jury answered: "He was."

"(3) Was the plaintiff induced to make the settlement with H. W. Lake by misrepresentation and fraud in manner substantially as alleged in his pleading? You will answer 'He was' or 'He was not,' as you may find the fact to be." The jury answered: "He was."

Appellant seasonably objected to these issues and the trial court's charge thereon, first, because of failure to define to the jury any of the terms used therein; second, because issue No. 2, in particular was multifarious, and submitted to the jury at least three distinct issues of fact in one question; and, third, because the court referred the jury to plaintiff's pleadings to define or determine what was the meaning of the terms used.

Clearly the trial court erred in failing to define the terms used. Article 2189, R. S. 1925, provides, among other things, that:

"In submitting special issues the court shall submit such explanations and definitions of legal terms as shall be necessary to enable the jury to properly pass upon and render a verdict on such issues."

This statute is clear, and should be followed. Special issues Nos. 2 and 3 contained such legal terms. "Overreaching" should, as to its legal consequences, have been defined. "Pressure" and "threats" import duress, and become a question of law (Coleman v. Coleman [Tex. Civ. App.] 293 S. W. 701), requiring explanation to the jury. "Undue influence" also has a well-defined legal significance which should have been defined. Smith v. Smith (Tex. Civ. App.) 153 S. W. 918. The same is also true of the terms "misrepresentation" and "fraud," used in special issue No. 3. Wortman v. Young (Tex. Civ. App.) 221 S. W. 662. These terms have come to have a fixed legal meaning which an ordinary person would not readily understand, necessitating, therefore, their explanation by the court. Robertson et al. v. Holden (Tex. Com. App.) 1 S.W.(2d) 570.

[8] In reply to appellant's second objection, appellee contends that the issues included in special issue No. 2, complained of as being multifarious, are presented conjunctively, and not disjunctively, and that, as pleaded and as sustained by his testimony the controlling issue was, not whether any one of such separate questions of overreaching, undue influence, etc., existed, but whether, as the result of all of them combined, Solomon was improperly induced to make said settlement. And also that as presented it imposed a heavier burden on appellee, requiring him to establish the affirmative of all of said issues before the jury could find as it did, and that therefore appellant cannot complain. Any one of the grounds embodied in said special issue would have been sufficient, if it existed, to set aside the settlement agreement. The pleadings set them all up in general terms. The evidence as to whether any of them existed was conflicting. Under such circumstances there can be no doubt that Solomon could have complained of such submission, and could have required the court to submit them separately. If, however, he chose not to rely upon any one of them, but upon all of them combined as inducing an improper settlement, and such was his basis of recovery, and under such theory and under said charge he assumed a more onerous burden than was otherwise required of him, notwithstanding the provisions of article 2189, R. S. 1925, we are not prepared to say that appellant can complain.

[9, 10] Nor was it necessary for appellant to tender proper charges on the questions raised. It was sufficient to call the trial court's attention to such defects by a proper objection thereto. It then became the duty of the trial court to correct the error and give a proper charge upon the matters complained of. The appellant was not required to prepare and submit charges on issues on which the plaintiff relied to recover against it. Austin Gaslight Co. v. Anderson (Tex. Civ. App.) 262 S. W. 136. The rule as announced by our Supreme Court in Gulf, C. & S. F. Ry. Co. v. Conley, 113 Tex. 472, 260 S. W. 561, 32 A. L. R. 1183, is that, where the trial court *fails to submit any particular* issue, the complaining party must have tendered a special charge thereon in order to avail himself of such error upon appeal; but, where the trial court undertakes to charge upon or submit such issue, and *submits a defective or erroneous charge thereon,* a proper objection thereto is sufficient to preserve the matter on appeal. Robertson et al. v. Holden, supra.

A proper definition or explanation of the legal terms used in said special issues would have sufficed for a proper guidance of the jury without referring them to the plaintiff's pleadings, and renders unnecessary here any further discussion of that question raised by appellant.

Propositions 6 and 7 which assert insufficiency of appellee's pleadings to present issues of fraud, duress, or undue influence are without merit, and are overruled.

[11] In propositions 8, 9, and 10 it is insisted that there was no evidence in legal contemplation to support a finding that appellee was induced to make said settlement agree-

ment by duress, by undue influence, or by fraud. Appellant devotes much of its brief to these contentions, and cites numerous authorities in support of them. In view of a reversal on other grounds, we refrain from discussing the evidence further than to say that, under all the facts and circumstances of the case, the evidence was sufficient to go to the jury on all of these issues. In passing upon such question, we are concerned with its contradictions, its probative force, or the credibility of the witnesses. That was the jury's sphere, and, unless reasonable minds could not differ on the deductions to be drawn from the evidence as a whole, the appellate court will not interfere. Barron v. Ry. Co. (Tex. Com. App.) 249 S. W. 825; Dunlap v. Oak Cliff Pharmacy Co. (Tex. Civ. App.) 288 S. W. 236; Buchanan v. Davis (Tex. Civ. App.) 300 S. W. 989. Nor is it necessary here to define or discuss what may or may not in the instant case have constituted duress. undue influence, or fraud. The question of what are proper definitions of these terms is not before us.

[12] Appellant's next contention is that the answer of the jury to special issue No. 4 is in such irreconcilable conflict with their answer to special issue No. 2 that no judgment can be based thereon. Special issue No. 4 was:

"Under all the conditions then existing, was plaintiff, at the time of the settlement with H. W. Lake, in condition to, and able to, exercise his own free and intelligent judgment in determining as to the advisability of making such settlement."

The jury answered, "He was." One of the necessary elements both of duress and undue influence is that the complaining party must have been deprived of his free and independent judgment and choice, and subjected to the will of another. If then, at the time he made the settlement with Lake, his will was overcome by, and subjected to, that of Lake, we do not see how it can be said that he was "in condition to, and able to, exercise his own free and intelligent judgment" in making such settlement. Appellee insists that, though the jury found that Solomon was in "condition to, and able to," use his own judgment in the matter, it did not find that he did so use it, but, on the contrary, in answer to special issue No. 2, found that he did not. The two findings, however, are not in our opinion reconcilable.

[13] The remaining propositions relate to statements in Solomon's application for said policy with reference to his income claimed by appellant to have been false, and to his wife's testimony with reference thereto. We find no merit in these contentions. The jury found that his answers were not false, and further that the amount of Solomon's weekly income was not material to the risk with reference to the injury received. Article 5045, R. S. 1925, expressly provides that, if in an application a fact is misrepresented which is immaterial, and which does not affect the risks, it will not bar a recovery on the policy. And article 5043 provides that the question of whether such misrepresentation, if made, was material to the risk or contributed to the loss in any manner, is a question of fact to be determined by the court or jury. If not material to the risk, their truth or falsity became immaterial. A fixed sum was provided in said policy for loss of a foot by accident, a contingency not related to his weekly income. The nature of his employment, or a change therein, if misrepresented, might be material to the risk, but the amount of his weekly income, so long as he continued in the same employment, would not affect the risk, nor bar a recovery. Ætna Life Ins. Co. v. Claypool, 128 Ky. 43, 107 S. W. 325; Claypool v. Continental Casualty Co., 129 Ky. 682, 112 S. W. 835; Sullivan v. Hartford Fire Ins. Co., 89 Tex. 665, 36 S. W. 73.

For the reasons stated, the judgment of the trial court must be reversed, and the cause remanded for another trial.

Reversed and remanded.