## UNITED EMPLOYERS CASUALTY CO. v. HUDSON.

### No. 5812.

Court of Civil Appeals of Texas. Texarkana.

May 15, 1941.

Will R. Saunders and W. E. Johnson, both of Dallas, and Simpson, Dorenfield & Fullingim, of Amarillo, for appellant.

Wm. V. Brown, of Texarkana, for appellee.

JOHNSON, Chief Justice.

This suit was filed by Leon Hudson against United Employers Casualty Company seeking to set aside an order of the Industrial Accident Board and to recover compensation for total and permanent loss of the sight of his right eye, alleged to have resulted from accidental injury sustained in the course of his employment with R. F. Ball Construction Company, of which the defendant, United Employers Casualty Company, was the compensation insurance carrier. The defendant answered by general demurrer, special exception and general denial. The cause was submitted upon special issues in response to which the jury's answers were favorable to plaintiff. Judgment was entered awarding plaintiff recovery of compensation for total and permanent loss of the sight of his right eye, at the rate of $9.60 per week for 100 weeks. From an order overruling its motion for new trial defendant has appealed.

Appellant's first proposition complains of the action of the trial court in overruling its objections and exceptions to

special issue No. 2 of the court's charge, reading:

"Do you find from a preponderance of the evidence that such injury, if any you have found, resulted in the total and permanent loss of the sight of plaintiff's right eye?" (Jury answer: "Yes")

"By the word 'total' is meant: 'An absolute, complete and 100 per cent loss of sight.' By the term 'permanent' is meant: 'Remaining always the same.'"

Appellant timely objected to the submission of the issue because it was multifarious in that it contains two separate and distinct issues, capable of being answered differently, to-wit: (a) The issue as to whether appellee had sustained "total" loss of the sight of the right eye; and (b) whether such loss was "permanent." The issue is subject to the objections urged. R.C.S.1925, Article 2189, provides that special issues shall be submitted distinctly and separately. The questions as to the totality of the incapacity and the duration of such incapacity are two separate issues and are required to be submitted separately. Lumbermen's Reciprocal Ass'n v. Wilmoth, Tex.Com.App., 12 S.W.2d 972; Brotherhood of R. R. Trainmen v. Wood, Tex.Civ. App., 79 S.W.2d 665, and authorities therein collated; Simmonds v. St. Louis, B. & M. Ry., Tex.Com.App., 29 S.W.2d 989; Stinnett v. Paramount-Famous Lasky Corp'n, Tex.Com.App., 37 S.W.2d 145. Appellee contends that since he relied on both of said issues for grounds of recovery, their multifarious submission places a greater burden upon him but did not injure appellant, therefore appellant could not complain, citing Bankers' Lloyds v. Pollard, Tex.Civ.App., 40 S.W.2d 859; Fidelity Union Casualty Co. v. Cary, Tex.Civ. App., 13 S.W.2d 993; Georgia Casualty Co. v. Gibson, Tex.Civ.App., 11 S.W.2d 191, writ dismissed; Southern Surety Co. v. Solomon, Tex.Civ.App., 4 S.W.2d 599, par. 8; Texas Emp. Ins. Ass'n v. Heuer, Tex. Civ.App., 10 S.W.2d 756; Speer's Law of Special Issues, 240, par. 184. Notwithstanding the views expressed in the text and in some of the opinions of the Courts of Civil Appeals cited by appellee, it appears that the question has been decided and settled by the Commission of Appeals adversely to appellee's contention. In Lumbermen's Reciprocal Ass'n v. Wilmoth, supra [12 S.W.2d 973], it is said: "The special issue complained of reads as follows: 'Was or not the injury received by G. T. Wilmoth such as to totally and permanently incapacitate him from following any gainful occupation?' We think the special issue is subject to the objection urged. The statute (article 2189, R.S. 1925) requires that special issues shall be submitted distinctly and separately. This issue, in the form submitted, combined two separate and distinct questions of fact, one of which might be answered by the jury in the negative, and the other in the affirmative, or vice versa. A disability may be total, but temporary, or it may be permanent, but partial. The questions as to the totality of the incapacity and the duration of the injury should have been submitted as separate issues."

The above rule has been held to apply to the specific injury involved, namely, the loss of the sight of one eye. Brotherhood of R. T. v. Wood, supra.

Appellee further contends that the evidence conclusively shows that appellee's injury resulted in the total loss of the sight of his right eye; that the only part of special issue No. 2 necessary to be determined was the "duration" of such incapacity, therefore that part of special issue No. 2 inquiring as to the totality of such incapacity may be treated as surplusage. After careful consideration of the record, we are unable to sustain this contention. The testimony shows that on September 9, 1939, while working for R. F. Ball Construction Company in the erection of the Federal Correctional Institution at Texarkana, Texas, appellee was wrecking forms with a steel wrecking bar when some foreign substance struck him in the right eye. He was immediately carried to the office of Dr. Joe Tyson who made a casual examination and referred him to Dr. L. H. Lanier for treatment. Dr. Lanier extracted from appellee's right eyeball six small pieces of steel, concrete, wood, or other foreign substances, the exact nature of which he did not determine. Dr. Lanier treated the eye again on September 10th, 11th, 13th, and discharged him on the 14th as having recovered from the injury. Forty-four days later, on October 28, 1939, appellee was treated by Dr. R. R. Kirkpatrick. Dr. Kirkpatrick, witness for appellee, testified that his examination revealed that appellee was totally blind in his right eye, that appellee's loss of vision in the right eye is so complete that he can not distinguish the brightest light from total darkness, and that such condition is the result of the in-

juries sustained September 9th and was not caused from any disease; that appellee was not suffering from choroiditis, or any other disease. Appellee testified that there was "nothing wrong" with his right eye or its vision prior to his injury, and that continuously since the injury he has been totally blind in that eye. Dr. Lanier testified for appellant that at the time he extracted the six pieces of foreign substance from appellee's right eye, his examination revealed that appellee was practically blind in his right eye—could only see a four-inch letter twenty feet distant—but that such loss of sight was caused by "an old and well disseminated disease known as choroiditis." That "there was no material injury to those parts of the eye producing vision, except a slight, short congestion due to the presence of the foreign bodies, and they stayed congested a little for a few days, as it might in foreign body cases * * * I am positive they (the foreign bodies) did not do any permanent injury to the interior of the eye." Dr. Lanier further testified to the effect that the eye had entirely recovered from the injury at the time he released appellee on September 14th and that the condition of his vision as the result of the disease was about the same when he released appellee as when he first examined him.

"Q. After you released him were there any remaining effects of the injuries that would have interfered with his vision due to the foreign bodies? A. No.

"Q. Was he suffering from anything when you released him that would have affected his vision other than the old or existing disseminated choroiditis in his eye? A. No."

Clearly, Dr. Lanier's testimony disputes the issue that appellee's injury resulted in the total loss of the sight of his right eye, as much so as it disputes the permanency of such injury. On the other hand, should appellee's contention be sustained that the testimony undisputedly shows that his injury resulted in the total loss of vision in the right eye, and for such reason that part of special issue No. 2 inquiring as to the totality of such incapacity may be treated as surplusage and therefore harmless error, the question as to the duration of such in-

capacity is concededly a disputed issue. Dr. Lanier's testimony for appellant is to the effect that the injury was only temporary and had no permanent results. The issue as to whether such loss of sight was "temporary" was not submitted to the jury. Appellant timely requested the submission of that issue, and presented to the court its specially requested issue as follows: "Do you find from a preponderance of the evidence that the plaintiff's total loss, if such you found, of sight in his right eye, due to the injury, if any you found, of September 9, 1939, was not temporary? Answer 'Yes' or 'No.'"

To the action of the trial court in refusing to submit said issue to the jury, appellant duly excepted and assigned error thereto, brought forward in its brief as proposition No. 8. Notwithstanding the inquiry in special issue No. 2, and the jury's answer thereto that appellee's loss of sight in his right eye was "permanent," appellant was entitled to have the converse of said issue, that is, as to whether such loss of sight was "temporary," submitted to the jury—since appellant raised the issue by general denial, and in the testimony as a defensive issue. Wright v. Traders & General Ins. Co., 132 Tex. 172, 123 S.W. 2d 314, 317; Traders' & Gen. Ins. Co. v. Forrest, Tex.Civ.App., 78 S.W.2d 987; Traders & Gen. Ins. Co. v. Babb, Tex.Civ. App., 83 S.W.2d 778.

Appellant asserts several propositions challenging the sufficiency of appellee's petition in that it failed to expressly allege that the loss of the sight of his right eye was "permanent." Appellee contends that the case was tried on the theory that he had sufficiently alleged that the loss of the sight of his right eye was permanent. Since the case will have to be reversed under appellant's first and eighth propositions, above discussed, it is not necessary that we discuss the propositions challenging the sufficiency of the petition in the particular above mentioned, further than to suggest that it should be amended before another trial to meet the complaint now urged against it.

The judgment is reversed and the cause remanded.